# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 19-344V
### (not to be published)

| | |
|---|---|
| IVIE DOTSON,<br>*Parent and guardian of A.D., a minor*,<br><br>                        **Petitioner**,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                        **Respondent**. | Chief Special Master Corcoran<br><br>Filed: October 25, 2022<br><br>Special Processing Unit (SPU);<br>Attorney's Fees and Costs;<br>Reasonable Basis Determination |

*David Charles Richards, Christensen & Jensen, P.C., Salt Lake City, UT, for Petitioner.*

*Lara Ann Englund, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION DENYING ATTORNEY'S FEES AND COSTS[1]

On March 5, 2019, Ivie Dotson, parent and guardian of A.D., filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged two possible Table injuries stemming from a March 7, 2014 measles, mumps, rubella, and varicella ("MMRV") vaccination: either i) varicella vaccine-strain viral reactivation disease, or ii) disseminated

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

varicella vaccine-strain viral disease. Petition at 1-2. At Petitioner's request, however, the matter was dismissed on October 27, 2020. ECF No. 29.

Petitioner has now requested a fees award. But because she has failed to establish there was a reasonable basis for her claim, she is not entitled to an award of attorney's fees and costs, and the fees motion is therefore denied.

## I.    Procedural History

Several months after the claim's initiation, a status conference was held on October 24, 2019, and then Respondent filed his Rule 4(c) Report disputing Petitioner's entitlement to compensation. ECF No. 23.

On July 14, 2020, the parties held a telephonic status conference during which Petitioner was informed that the current record included insufficient evidence to establish either of her alleged theories. ECF No. 24. For example, with respect to varicella vaccine-strain viral reactivation disease, to show that an individual suffered a Table injury, "[t]here must be laboratory confirmation that the vaccine-strain of the varicella virus is present ...." *See* 42 C.F.R. § 100.3(a) and (b)(12). Bur as Petitioner confirmed during the call, no laboratory testing had occurred.

In addition, a Table claim alleging disseminated varicella vaccine-strain viral disease must establish that the "varicella illness ... involves the skin beyond the dermatome in which the vaccine was given and/or disease caused by the vaccine-strain varicella in another organ." *See* 42 C.F.R. § 100.3(a) and (b)(11). And if strain determination was not performed, the onset of the illness in any organ must occur 7 to 42 days after vaccination. Petitioner confirmed, however, both that no testing was conducted and that the record indicated onset was within 24 hours – too soon to support the claim.

Based upon the foregoing, an Order to Show Cause was issued, affording Petitioner 30 days to file additional evidence indicating that A.D. had likely suffered a Table Injury. ECF No. 24. On August 13, 2020, Petitioner filed a status report stating that there was no additional evidence in support of this claim. ECF No. 25. Accordingly, on September 1, 2020, a second Order to Show Cause was issued giving Petitioner until September 30, 2020, to show cause why this case should not be dismissed for failure to meet the Table requirements and/or as untimely. ECF No. 26.

On September 30, 2020, Petitioner filed a Motion to Voluntarily Dismiss pursuant to Rule 21(a). ECF No. 27. Petitioner indicated in her motion that "[a]n investigation of the

facts and science supporting her case has demonstrated to [P]etitioner that she will be unable to prove that she is entitled to compensation in the Vaccine Program." *Id.* at 1. This matter was subsequently dismissed for insufficient proof on October 27, 2020. ECF No. 29.

On April 23, 2021, Petitioner filed a Motion for Attorney Fees and Costs requesting an award of (FIX THIS) **$22,561.13.54.** ECF No. 32. Respondent opposed a fees award, maintaining that the claim lacked reasonable basis. ECF No. 35 at 9. Petitioner filed a reply on June 21, 2021, submitting that reasonable basis existed in this matter up to the point of its voluntary dismissal. *See* ECF No. 37. This matter is now ripe for consideration.

## II.   Legal Standard

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). It has been observed that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that fees be awarded for *every* losing petition. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs in a case in which compensation was not awarded only if "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Although reasonable basis must be shown to entitle an unsuccessful petitioner to a fees award, special masters are still empowered by the Act to deny or limit fees in that context *even* where reasonable basis for the claim is demonstrated. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, special masters are to apply a two-prong test prior to awarding fees in an unsuccessful case. First, there is a subjective inquiry, in which it is assessed whether the petition was brought in good faith, followed by an objective

inquiry, when the claim's reasonable basis is evaluated. *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 635 (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("*Cottingham I*"). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

Cases in which good faith has been found to be lacking often involve petitioners who failed to produce or actively concealed evidence undermining their claims. *Purnell-Reid v. Sec'y of Health & Hum. Servs.,* No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. Apr. 6, 2020); *Crowding v. Sec'y of Health & Hum. Servs.,* No. 16-0876V, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019); *Heath v. Sec'y of Health & Hum. Servs.*, No. 08-0086V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Carter v. Sec'y of Health & Hum. Servs.*, No. 90-3659V, 1996 WL 402033 (Fed. Cl. Spec. Mstr. July 3, 1996).

"Additionally, a petitioner's attorney's conduct may also be relevant when evaluating good faith." *Purnell-Reid*, 2020 WL 2203712, at *6. "Counsel still have a duty to investigate a Program claim even if they reasonably find their client to be a credible individual." *Cortez v. Sec'y of Health & Hum. Servs.*, No. 09-0176V, 2014 WL 1604002, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). Factors, such as a looming statute of limitations and the conduct of counsel, are properly considered when determining whether good faith exists – but *do not bear* on the claim's objective basis. *Simmons,* 875 F.3d at 636; *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018) ("the effort that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period . . . are properly evaluated in determining whether a petition was brought in good faith").

"Reasonable basis, on the other hand, is an objective test, satisfied through objective evidence." *Cottingham I,* 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

4

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665 at 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish *some evidence* in support of the claim.'" *Id.* (quoting *Chuisano,* 116 Fed. Cl. at 288, emphasis added in *Wirtshafter*). Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II"*). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, determining reasonable basis is not a static inquiry. The reasonable basis which may have existed when a claim was filed can cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

### III.   Parties' Arguments

Respondent does not contest good faith but asserts that reasonable basis never existed for Petitioner's claim. ECF No. 35 at 1. He notes that none of the medical records demonstrate A.D. ever suffered from either of the alleged Table injuries – varicella vaccine-strain viral reactivation disease or disseminated varicella vaccine-strain viral disease. *Id.* at 2. "Simply having a shingles outbreak does not establish the A.D. suffered varicella vaccine-related disease." *Id.* at 11.

Further, Respondent notes that Petitioner never obtained the objective laboratory tests required to confirm the presence of vaccine-strain varicella virus, and such injuries cannot be established based on medical opinion in the absence of laboratory confirmation. ECF No. 35 at 10. "[I]t was clear from the Table requirement that to advance such claims as made by petitioner here, she would necessarily have to present lab test results…petitioner failed to obtain such tests that would have established a reasonable basis." *Id.* Respondent concludes that since the requirements of the claim were plainly

5

set forth (since the Table publishes them specifically), the lack of objective evidence to even potentially establish the elements at the outset of the case's initiation means the claim never possessed the kind of minimal objective support required under the reasonable basis test. *Id.* at 11.

Petitioner appears to disagree with Respondent's argument that a lack of the required laboratory test results extinguishes reasonable basis. *See* ECF No. 37. Petitioner argues that her attorney "reviewed Petitioner's medical records and relied upon the Petitioner's medical providers' opinion that the Petitioner's shingles outbreaks were related to her Varicella vaccine. *Id.* at 3. Petitioner cites no evidence in support of this assertion, however. Petitioner further argues that "[c]ounsel zealously represented Petitioner up to the point that it became clear that Petitioner had received to the point where necessary laboratory testing to confirm her was unlikely," at which point counsel recognized there was no longer reasonable basis and moved to dismiss the claim. *Id.* at 6. Thus, fees and costs should be awarded. *Id.*

## IV.   Analysis

Petitioner's claim alleged two possible Table injuries: varicella vaccine-strain viral reactivation disease or disseminated varicella vaccine-strain viral disease. The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the requirements to establish each Table injury. The criteria for establishing disseminated varicella vaccine-strain viral disease are as follows:

> Disseminated varicella vaccine-strain viral disease is defined as a varicella illness that involves the skin beyond the dermatome in which the vaccination was given and/or disease caused by vaccine-strain varicella in another organ. For organs other than the skin, the disease must be demonstrated in the involved organ and not just through mildly abnormal laboratory values. If there is involvement of an organ beyond the skin, and no virus was identified in that organ, the involvement of all organs must occur as part of the same, discrete illness. If strain determination reveals wild-type varicella virus or another, non-vaccine-strain virus, the viral disease shall not be considered to be a condition set forth in the Table. **If strain determination is not done or if the strain cannot be identified, onset of illness in any organ must occur 7- 42 days after vaccination.**

42 C.F.R. § 100.3(a) and (b)(11) (emphasis added). The criteria for establishing varicella vaccine-strain viral reactivation disease are as follows:

> Varicella vaccine-strain viral reactivation disease is defined as the presence of the rash of herpes zoster with or without concurrent disease in an organ other than the skin. Zoster, or shingles, is a painful, unilateral, pruritic rash appearing in one or more sensory dermatomes. For organs other than the skin, the disease must be demonstrated in the involved organ and not just through mildly abnormal laboratory values. **There must be laboratory confirmation that the vaccine-strain of the varicella virus is present in the skin or in any other involved organ, for example by oligonucleotide or polymerase chain reaction.** If strain determination reveals wild-type varicella virus or another, non-vaccine-strain virus, the viral disease shall not be considered to be a condition set forth in the Table.

42 C.F.R. § 100.3(a) and (b)(12) (emphasis added). In addition to requirements concerning the vaccination received, suffering the residual effects of her injury for more than six months, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

After a review of the record, I find that Petitioner lacked the reasonable basis for her claim – and that its objective insufficiency was known, or should have been known, as of the time of the case's initiation. Specifically, I note the following facts and representations made in the pendency of this matter:

- On March 7, 2014, A.D. received a DTaP/IPV vaccine on her left thigh, a Hepatitis B vaccine on her left thigh, and the subject MMRV vaccine on her left arm. Ex. 3 at 35-36.

- On March 14, 2014, A.D. returned to her pediatrician with a rash on her chest and back. Ex. 3 at 37. "Came in last Friday to get immunizations and she developed a rash that night. They are little red bumps on her chest and back. Mom says they

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. See § 11(c)(1)(A)(B)(D)(E).

look like they could be chicken pox but she had a very mild case of them a few years ago. The rash is itchy." *Id.* Upon examination the physician assistant-certified ("PA-C") documented "several grape like clusters on the trunk (sic) it is following e (sic) dermatome but doesn't cross the midline." *Id.* at 38. The PA-C assessed A.D. with Varicella shingles. *Id.* at 39. Benadryl was advised; no testing or further assessment was conducted. *Id.*

- On March 31, 2014, A.D. received a Hepatitis A vaccine. No rash was noted. Ex. 3 at 40.

- On September 26, 2014, A.D. presented for her five-year-old wellness appointment. Ex. 3 at 41. No rash or skin issue was noted. A.D. received a non-invasive hemoglobin laboratory test. *Id.* at 44-45.

- On December 16, 2014, A.D. received a Hepatitis B vaccine. Ex. 3 at 47.

- O July 3, 2017, A.D. presented for her seven-year-old wellness appointment. Ex 3 at 49. A physical exam was conducted and no abnormalities were noted; her skin was documented to be clear. *Id.* at 52. No concerns were reported. *See id.* at 49-53.

- On March 20, 2018, A.D. presented for a sick visit due to shingles. Ex. 3 at 54; Ex. 8 at 1. The nurse practitioner ("NP") noted, "mom says this is the 4th time she has had shingles, mom thinks this is related to the varicella vaccine." Ex. 8 at 1. Upon physical exam, the NP noted a small cluster of scabbed vesicles with red based to the left lower back with an area of approximately 2 inches by 1 inch. *Id.* at 5-9. No treatment was provided, and no testing was completed. *Id.* at 9. A.D. was assessed with zoster without complications. *Id.*

- Petitioner filed her Petition on March 5, 2019. ECF No. 1. In it, she contended "that [A.D's] injury is the result of her March 7, 2014 MMR/Varicella vaccination, and is a Varicella Vaccine-Strain Viral Reactivation Disease or, alternatively, a Disseminated Varicella Vaccine-Strain Viral Disease, as set forth in the Program's Vaccine Injury Table." *Id.* at 1-2. Petitioner alleged that between 2014-2018, "[A.D.] periodically would break out with shingles." *Id.* at 3; Ex. 1 at ¶ 5.

The above reveals the lack of minimal objective basis for bringing the claim – the elements of which were clearly set forth in the Vaccine Table. Indeed, the claim's

deficiencies go beyond the Table elements, extending to requirements that apply to almost all vaccine claims.

In particular, Petitioner cannot (and could not as of filing) meet specific Table criteria for varicella vaccine-strain viral reactivation disease. As laid out above, the relevant Table injury requires "laboratory confirmation that the vaccine-strain of the varicella virus is present in the skin or in any other involved organ, for example by oligonucleotide or polymerase chain reaction." 42 C.F.R. § 100.3 (12). But none of A.D.'s shingles events were confirmed with laboratory testing, and no viral strains were determined. Petitioner similarly cannot meet the requirements for her alternative Table claim of disseminated varicella vaccine-strain viral disease. "If strain determination is not done or if the strain cannot be identified, onset of illness in any organ must occur 7- 42 days after vaccination." 42 C.F.R. § 100.3 (11). No strain determination was completed, and onset was clearly indicated to have occurred within 24 hours. Ex. 3 at 37. Despite such Table requirements, Petitioner alleged "Varicella Vaccine-Strain Viral Reactivation Disease or, alternatively, a Disseminated Varicella Vaccine-Strain Viral Disease, *as set forth in the Program's Vaccine Injury Table.*" Petition at 1-2 (emphasis added). Petitioner was thus aware, at the outset of the case, that she was asserting a Table claim, and hence can be deemed to have understood her burden. And she has not shown that the elements of that claim were ever reasonably disputed fact matters that required development, rather than issues that could be firmly ascertained as of the Petition's filing.

In addition, it does not appear that Petitioner could have met the six-months severity requirement. Although Petitioner alleged that between 2014 and 2018, A.D. periodically broke out in shingles (Petition at 3; Ex. 1 at ¶ 5), the medical records only support A.D. experiencing shingles *twice* in that period: once following the allegedly-casual vaccination on March 7, 2014 (which resolved prior to March 31, 2014), and once during an unidentified period in March of 2018 (which was already resolving by the time A.D. had an appointment for her rash). Ex. 3 at 37, 40, 54; Ex. 8 at 1. While A.D. was assessed with shingles/herpes zoster both times, there was no viral testing conducted nor was any tissue sample taken. *See* Ex. 3 at 37-39; *see* Ex. 8 at 1-9. In effect, the evidence provides that A.D. experienced shingles (unknown strain) on two distinct occasions that have not been shown to be likely associated. There is no objective evidence that demonstrates an ongoing/chronic condition that lasted for more than six months from the post-vaccination onset. *See* Ex. at 41-45, 49-53.

Petitioner's arguments about her counsel's steps to verify the claim's objective basis are unpersuasive. Thus, while Petitioner argues that her counsel reviewed the medical records and "relied upon [A.D.'s] medical providers' opinion that [A.D.'s] shingles

outbreaks were related to her Varicella vaccine" in bringing the claim, there is no indication in the medical records that any medical provider *in fact* attributed her shingles to a vaccine. *See* ECF No. 37 at 3. And a medical provider's opinion is not the same as the laboratory confirmation required to succeed under the Table definition of the claim. Otherwise, counsel's good faith in attempting to assist Petitioner in bringing this action is not relevant to whether the claim possessed an objective underlying factual basis.

### Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs even to an unsuccessful litigant only if the litigant establishes the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought. Section 15(e)(1). In this case, I find that Petitioner's claim is insufficiently supported by objective evidence for a finding of reasonable basis. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED.</u>**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.